Good morning, judges. May it please the Court, I would like to reserve four minutes for rebuttal time. First thing I'd like to start out with this morning is to stress that I think there's an important principle of equity that should inform these proceedings in this case. And that principle is a principle that a wrongdoer should not be benefit from its wrongdoing. I think the U.S. Postal Service in this case has already benefited too much from its wrongdoing. For instance, earlier when the case was at the level of the EEOC administrative judge, the Postal Service suppressed evidence of reinstatements that were relevant to the case. And so the EEOC judge granted summary judgment in the case saying, well, there's no evidence that anybody else was reinstated who was younger than the complainant. And I think we're talking about here not just a suppression of evidence, but also the selective release of evidence. You know, I think that became evident when the case moved to the trial court level. And then suddenly just, you know, a few weeks before summary judgment was heard in the trial court, the Postal Service suddenly released evidence showing that, oh, well, in fact, there were 54 reinstatements in the relevant period of time that were relevant to this case. And that one of those reinstatements just happened to be for the motor carrier position of a person who was seven years older than plaintiff. And again, the trial court judge seized upon that evidence to grant summary judgment in the case. Although we know that even this selective release of evidence was only partial. We know that it was partial because in the record it is clear that Alfred Jameson also applied for reinstatement as a motor vehicle operator, but he was not listed on either the list of 54 reinstatements or on the list of non-reinstated individuals. It is also partial because you're really referring now to the sanctions issue. Is there evidence that the destruction of some of these files was in relation to this case as opposed to simply some other directive or practice? Well, I think the pattern has been fairly clear in this case. As I said, one of the cases at the EEOC level, the Postal Service claimed that there were no reinstatements at all, even though later they admitted that there were at least 54 reinstatements. And that, you know, I mean that. I'm really referring more specifically to destruction of documents. Well, yes. What I'm asking, and you can maybe help me out, I'm looking for where in the record to find the destruction related to this case. Yes. I think on the destruction of documents, one of the clearest pieces of evidence that documents were destroyed is that the government, although it's had many, many opportunities to do so, has never unequivocally denied that that happened. You know, maybe today we will, you know, they will make an unequivocal statement about that, but when, you know, this charge was raised in the trial court, the government never denied that the documents were destroyed. I think the declaration that they released to the trial court, the implications are very clear that they said, well, we searched, you know, through all the documents and we were unable to find any reinstatement documents. And then, you know, they cited the retention policy, which says that records are only kept for two years, even though some of the reinstatement documents were less than two years old. So I think there again, that shows you that there was something else going on other than the retention policy. But even the retention policy is not really that relevant, because they were under a legal duty from the time that Mr. Dickinson filed his original EEO case to preserve evidence in this case. So I hope that answers your question, Judge McEwen. Thank you. You have two hurdles to overcome. One is whether there is a pretextual situation. And the secondly is whether they hired anybody younger in a discriminatory manner for the motor vehicle positions. Well, Judge Archer, I don't think it's actually limited to the motor carrier position, because he was applying not just for the motor carrier. I know he applied for the clerk's position, but did he really argue that? He certainly presented evidence of that to the trial court. If you look at the supplemental record at pages 4 and 5, he clearly states that Mr. Dickinson applied for all positions for which he was qualified except for the letter carrier position. The clerk position was one of those positions. But actually, I think in order to choose the judge in the motion papers, you know, opposing the grant of a motion, did he assert in those papers that a reason that he was qualified for the letter carrier position was a reason that he was qualified for the letter carrier position? Did he show discrimination by showing it with respect to clerks? He presented evidence of that to the trial court, but he didn't argue that. I concede to that, that he did not actually make that argument in the trial court below, but. So how would the district judge be able to divine that that was a position it should benchmark the prima facie case against? Well, you know, as I stated, he did make it clear to the trial court that Mr. Dickinson did apply for all positions for which he was qualified except for the letter carrier position. And the clerk position was clearly one of those. The evidence was before the court. But, you know, I think even if this court finds that that argument was not made below, as I've argued in my papers, I think the, you know, this falls within the exceptions to the rule that an argument made below should not be considered at this level. I think it's clear that this Court has the discretion to consider those arguments. And I think in the interest of justice, it should do so. Otherwise, the Postal Service will be able to benefit from its wrongdoing. But I think I'd like to reserve the rest of my time for rebuttal. Thank you. Thank you. Good morning. May it please the Court. My name is Abraham Simmons. I'm an assistant United States attorney. I represent the United States, who in this case takes the form of John Potter in his official capacity as the Postmaster General of the United States. In this employment discrimination case, the plaintiff conceded a number of key factual and legal issues in the district court and, in fact, in the administrative proceedings. What was left for the district court to argue were three points, whether the plaintiff presented sufficient evidence for a prima facie case of age discrimination. If so, if the plaintiff had sufficient evidence to present in terms of his case for a, for, that Mr. Barrett, the manager of human relations at the San Francisco Post Office, his decision, whether his decision was a pretext for age discrimination. And if either of the two answers, or both of those two answers, were in the negative, whether there was something about the, the discovery proceedings, which was a pretext, should relieve plaintiff of the obligation to present such evidence. The district court answered no to each of these questions, and this court should affirm that ruling. The plaintiff began today by saying that the post office should not benefit from wrongdoing. And, Your Honors, you picked up on one question I'd like to address before I deal with some of my prepared remarks, and that is, well, what is the actual evidence of destruction of, of documents? The evidence that we're looking at is at the excerpts of record at page 254 through 256. It's the declaration of Carol Cruteau. You will not find in there that there was destruction of any particular document. In fact, what she says is that there has not been a retention of the files in that form that had to do with the reinstatement requests. This becomes interesting and a difficult question for a number of reasons. The plaintiff never actually did pose Ms. Cruteau. The plaintiff did not say we need additional time to do so. There was no declaration in, with, in furtherance of 56F, asking for time to, to put together more evidence. Instead, the plaintiff said he had enough information to demonstrate that he could get out of presenting evidence for a prima facie case or for a case of pretext because those files were no longer in their current form. What's important to know about those files is that this is a person applying for reinstatement. A person applying for reinstatement, the file that, that the existence of the file and the length of time that that file is going to remain in existence is dependent upon a lot of things, which jobs that person is looking for, when that person applies, whether that person gets considered, and what, what is, what we know in the record as it's, as it's put out right now is that there was a retention policy for the file in that form of two years. That does not mean that all the information regarding all those persons disappears. They are former employees. They all have Form 50s. They all have an official personnel file. There are some things that are going to be around or not. And ultimately, in this case, when it came down to it and the rubber hit the road, the United States, the Postal Service was able to reconstruct which persons left and came back and which codes for reinstatement were entered, and they got the information prior to the hearing on the motion for summary judgment. There is, in all of this, one inconsistency that, that, that counsel has actually mentioned. That is the decision of Mr. Jameson. We're not quite sure what happened to him. But remember, the plaintiff never asked to find out what happened to Mr. Jameson. Instead, the plaintiff came to the district court and said, please don't find out. Please don't let me find out. Please don't delay this case. Please let's not find more information. Let's assume that the Postal Service was not being straightforward from the very beginning of this case until today, and that that's enough for me to resolve me of the obligation to present evidence in support of my case. We submit that that's not the way that this case should go. With respect to the prima facie case, the plaintiff conceded in the district court that he was only pursuing an age discrimination case. You'll notice that even though he made that concession, the district court in its order did address the separate claim. It's not an issue on appeal. The plaintiff here argues that he has a separate he has separately put together a prima facie case of age discrimination with respect to the clerk position. If you would look in the excerpts of record at page four, that's the plaintiff's complaint. Paragraph 16, the plaintiff limits the sorts of positions that he says he was seeking and what the claim is based upon in this case. Plaintiff, because of his age, by terminating his employment and refusing to reinstate him by failing to select him for, and this is what the plaintiff says, available motor vehicle craft and maintenance positions. This is no different than what the plaintiff alleged in the administrative proceedings. If you look in the excerpts of record at pages 119, plaintiff limits his administrative complaint. That is to say the plaintiff never even exhausted the claim regarding clerks. He says in that administrative complaint that the case was about being denied reinstatement to an MVO or as a maintenance mechanic. If you look again in the excerpts of record at pages 202, 208, 215, the plaintiff again describes his claims to the magistrate judge. He says in each of the letters that he writes to the magistrate judge that he has to, at this case has to do with motor vehicle craft and maintenance positions, no mention of clerk. And again at page 187, the defendant in responding to the plaintiff's request for discovery sets out all the positions for persons that we took the position were similarly situated. That gave plaintiff plenty of notice to look at that list and make some effort at some point to amend his complaint, to change his claims, to let us all know that this case has something more to do with the postal service other than the maintenance and motor vehicle craft positions. This makes a big difference because there are a lot of things that do not now appear in the record. One, we cannot assume that the same persons who are making the decisions with regard to whether or not Mr. Dickerson was going to get a job in the motor vehicle craft was going to be the same if he was applying for a clerk position. Number two, at page 108 in the excerpts of record, you can look at the letter that Mr. Dickerson receives and it tells him that there may be a, I'm sorry, that citation is to the rules that apply to reinstatement. It makes a difference whether the person was a temporary, casual or accepted service employee. We know from page 288 of the excerpts of record that this plaintiff was in fact a part-time flexible driver. We don't know whether the same rules would apply to him if in fact he were a full-time clerk. We don't know whether the same rules apply. We don't know whether the same persons are making the same decisions with respect to whether he gets his job. So we would argue that this simply is not the time to allow a plaintiff to go back and try and make a separate claim for prima facie case with respect to the clerk position. There's one more thing. In the reply brief, the plaintiff actually mentioned that he does not think that he should lose his right to a jury trial. This court is probably aware that a jury trial is not available to the plaintiff in this case regardless of whether this were to go back. Why is that? The federal government has not waived its sovereign immunity for age discrimination claims. That is the case of Layman v. Nakashen at 453 U.S. 156. So for those reasons, we think that there is absolutely no reason to go back and allow a plaintiff to, at this late date, amend his complaint. A couple of things about the administrative proceedings that should be useful to this court. You have one minute left. Okay. One is that actually if there are questions that the court has, I could respond to them. Well, if we had questions, you'd hear them. Very well. Very well. If not, just a couple of things that may be useful to the court in rendering a decision. One is that Mr. Donald Barrett did retire before there was a response to the original request for information. You'll find that at Excerpts of Record 59, where it's clear that he had already retired during the administrative proceedings. And also that when Ms. Deborah Perez responded in the very first instance to the request for information, and we're trying to figure out why did she give us only the information regarding other persons who were denied reinstatement, you'll find the answer to that question at the Excerpts of Record at page 69, because that's what she was asked by the EEO investigator. Thank you very much. Thank you. Since I just have a short amount of time, I'm going to focus on the issue of the destruction of documents. I would point out that once again, although given an opportunity to clearly state whether or not the government destroyed the documents, the government has avoided the question. Has ducked the question and, you know, has not even given any alternative explanation for what happened to these documents. And I think that the reference to the retention of documents policy is, you know, does not help the government, because as I pointed out, some of the documents were less than two years old, number one. And number two, the government had a clear duty under 29 CFR 1602.14 and 1627.3 to have preserved those documents going back to when Mr. Dixon first filed the EEOC complaint. And I see that my time is up. Thank you, counsel. Case just argued will be submitted. Pardon? Case just argued will be submitted. Yes, Your Honor. Thank you.
judges: Reinhardt, McKeown, Archer